SOUTHERN POWER CO. v. McCLURE et al.

(Circuit Court of Appeals, Fourth Circuit.    January 8, 1917.)

No. 1476

1. MASTER AND SERVANT ⬅119—INJURIES TO SERVANT—DEGREE OF CARE—
   ELECTRICITY.
   An electric power company owes its employés the duty to exercise care
   commensurate with the dangerous and subtle power of electricity.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 210;
   Dec. Dig. ⬅119.]

2. APPEAL AND ERROR ⬅1005(1)—VERDICT—APPROVAL BY COURT.
   There is a presumption in favor of the conclusion of the district judge
   that there was material evidence of defendant's negligence and of the
   employé's freedom from negligence, and an appellate court should be
   clearly convinced before setting up its own judgment against that of the
   trial judge and the jury on an issue of negligence.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3860–
   3876, 3948; Dec. Dig. ⬅1005(1).]

3. MASTER AND SERVANT ⬅281(12)—INJURIES TO SERVANT—EVIDENCE—NEG-
   LIGENCE—CONTRIBUTORY NEGLIGENCE.
   In an action for the death of an electric power lineman, evidence *held*
   to show that the proximate cause of the accident was the lineman's neg-
   ligence in striking a wire which he knew to be highly charged with
   electricity, instead of the wire he was directed to strike, and which was
   not then charged.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 995;
   Dec. Dig. ⬅281(12).]

In Error to the District Court of the United States for the Western
District of North Carolina, at Salisbury; James E. Boyd, Judge.

Action by W. A. McClure and another, administrators of Grover
McClure, deceased, against the Southern Power Company.   Judgment
for plaintiffs, and defendant brings error.   Reversed.

W. S. O'B. Robinson, Jr., and F. I. Osborne, both of Charlotte, N.
C. (Osborne, Cocke & Robinson, of Charlotte, N. C., on the brief), for
plaintiff in error.

Thomas J. Jerome, of Greensboro, N. C. (H. S. Williams, of Con-
cord, N. C., Rufus E. Austin, of Albemarle, N. C., and Edward C.
Jerome, of Greensboro, N. C., on the brief), for defendants in error.

Before PRITCHARD and WOODS, Circuit Judges, and ROSE,
District Judge.

WOODS, Circuit Judge.   The administrators of the estate of Grover
McClure recovered a judgment for $3,500 for his death from contact
with a heavily charged wire of the Southern Power Company.   The
writ of error is based on the position that the District Judge should
have ordered a nonsuit or directed a verdict for the defendant because
of entire failure of evidence tending to show negligence on the part
of the defendant, and because of conclusive evidence of the negligence
of McClure as the sole efficient cause of his death.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] In the decision of the question full weight must be given to the obligation of defendant to exercise care commensurate with the dangerous and subtle power of electricity, and also to the presumption in favor of the conclusion of the District Judge that there was material evidence of defendant's negligence, and that McClure's negligence as the sole or contributing cause of the accident was not proved beyond reasonable controversy.

[2] An appellate court should be clearly convinced before setting up its own judgment against that of the trial judge and the jury on an issue of negligence. Nevertheless, in this case we cannot resist the conclusion that a fair statement of the evidence tends inevitably to the conclusion that the defendant was not responsible for the death of McClure.

[3] The Southern Power Company was changing its single circuit pole line for the transmission of electric power between High Point and Winston-Salem, N. C., to a double circuit steel tower line. McClure was an experienced lineman, and participated in the work under the direction of Fisher, the foreman. Work on the south wire of the towers could be done only when the current had been switched entirely to the north wire by using insulators, cutting the wire, and carrying it across and attaching it to the north wire. To prevent the interruption of the current during working days this switching of the current from one side to the other was done on Sunday. During the week before Sunday, July 5, 1914, the current had been running on the south wire while the force was working on the north wire. On that day McClure himself, with other linemen, cut the wires and switched the current to the north wire. During all the following week he and the other linemen were employed in the work of knocking out kinks in the loops of the south wire. He not only knew that the north wire was charged with a deadly current of electricity, but he had worked for almost an entire week on the south wire. He knew, or had every reason to know, that according to the method of the company and the necessity of the case the current would not be changed until the following Sunday. The uncontradicted testimony of the foreman and of every lineman who could be produced was to the effect that the foreman directed the linemen, including McClure, that each should go to a separate tower and straighten out with a stick the kinks in the loop of the south wire. The other linemen performed the work assigned to them on the south wire without injury. McClure ascended one of the towers, and struck at a kink in the loop of the north wire charged with 88,000 volts of electricity, and was almost instantly killed.

The attempt is made to support an inference that McClure was ordered to strike out the kinks on the north side by the testimony of witnesses, who were present at the moment, or soon after, that they saw a kink or kinks in the north wire, but did not see kinks in the south wire. These witnesses were mere casual observers of the accident, and it would be beyond all reason to infer, first, that there were no kinks on the south side because they did not observe any, and from that to infer that the foreman directed McClure to strike out kinks on a wire

which he knew to be deadly because these casual observers saw no kinks in the south wire.

The other testimony relied on and admitted by the District Judge solely as a contradiction of Fisher, the foreman, was that of W. A. Smith, W. A. McClure, and Mrs. Hattie McClure, the father-in-law, father, and wife of Grover McClure, to the effect that Fisher told them that the fault was not that of Grover or himself, but of the substation in not carrying out his request to deaden the north wire. The testimony of these witnesses is vague and variant. But if Fisher made such a statement, the physical conditions demonstrate its falsity. Everybody concerned knew that the current would not be stopped altogether, and that it would be running on one of the wires. It had been running all the week, it was necessary that it should run, and there was not a particle of evidence of any reason for stopping it, or for supposing it had been stopped. It could be changed to the south wire only by the working force to which Fisher belonged. This could be done only by having the current taken from both wires and actually cutting the wire and reattaching it to the south wire. Fisher knew this, and therefore the statement attributed to him could not be true. Unless we reject the unquestioned evidence as to physical conditions and presume negligence on the part of the defendant, it is impossible to resist the conclusion that McClure was responsible for the accident. It is difficult to account for his action. Familiarity with danger tends to produce disregard of it. We know that from this and other causes the human mind sometimes slips, and fails to correlate and take into account perfectly apprehended facts. We can find in the record no other explanation of the sad tragedy.

Reversed.